IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 27, 2018 Session

## STATE OF TENNESSEE v. JAYME LYNN SHAFFER

**Appeal from the Criminal Court for Knox County**
No. 110925      Scott Green, Judge

_____

### No. E2017-02432-CCA-R3-CD

_____

The Defendant, Jayme Lynn Shaffer, pleaded guilty to two counts of theft of property valued at more than $1,000 with an agreed effective sentence of three years. The parties agreed to allow the trial court to determine the manner of service of her sentence and whether she was entitled to judicial diversion. After the hearing, the trial court denied the Defendant's request for judicial diversion but granted her request for a probationary sentence. On appeal, the Defendant contends that the trial court erred when it denied her request for judicial diversion. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., joined.

Robert W. White, Sr., Maryville, Tennessee, for the appellant, Jayme Lynn Shaffer.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme Prater Allen, District Attorney General; and William Charles Bright, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

The Defendant was indicted by information for two counts of theft of property valued at more than $1,000. The charges indicate that the Defendant took money from two businesses, Tactical Advantage Corporation ("TAC") and SIA, LLC. The Defendant pleaded guilty to those offenses on July 10, 2017. A copy of the guilty plea hearing is not included in the record.

The presentence report, which is included in the record, contains an official version of the facts and also the Defendant's version of the facts. They are as follows:

OFFICIAL VERSION

. . . .

On 08/11/2016 a warrant was issued alleging the Defendant committed the offense of theft ($1,000 to $9,999.99). This incident occurred on or about Friday, 06/05/2015 and Wednesday, 10/14/2015 at 16:00 . . . in Knoxville, Tennessee. On or about 06/05/2015, the Defendant was employed by victim business, [TAC], as a book keeper. The Defendant wrote an unauthorized check on the victim business Suntrust Bank Account to codefendant, Demon Richards, for $1,250. On or about 10/14/2015, the Defendant wrote another check to the codefendant for $1,800. The Defendant did not have authorization to write checks to the codefendant and to deprive the victim business of their money, totaling $3,050. This occurred in Knox County, Tennessee.

On 08/11/2016, a warrant was issued alleging the Defendant committed the offense of theft ($1,000 to $9,999.99). This incident occurred on or about Monday 11/29/2015 at 8:00 until 11/11/2016 . . . in Knoxville, Tennessee. The Defendant was employed as a book keeper for victim business, SIA LLC. The Defendant wrote four unauthorized checks on the victim's business bank account to codefendant, Demon Richards. The codefendant is not a vendor and did not provide any services or goods to the victim business. The Defendant did not have permission from the victim to deprive them of $9,805. This occurred in Knox County, Tennessee.

. . . .

DEFENDANT'S VERSION

"While working at [TAC], I met a guy name[d] Demon Richards. Demon and I became friends, and would occasionally meet for dinner and drinks. We would talk about o[u]r day, jobs, etc.

Demon made the suggestion that I write him a check, and he would cash it, then give me some money. My first reaction was "no way." During the next several weeks of our friendship, it was mentioned several times, and I

told him I would do it. So I wrote a check to him, he cashed the check. We split the money.

It was by far the worst decision and action I ever made and done. I am in no way putting blame on him, for I know I am responsible for my choices.

At the Defendant's sentencing hearing, the parties presented the following evidence: Morgan Alexander Schubert, an owner at SIA Firearms testified that his business was a firearms training facility located in Knoxville, Tennessee, which he and his partner, Scott Hale, started in November 2015. The Defendant, who was their bookkeeper, wrote the first unauthorized check within forty-five days of their opening their new business. Mr. Schubert said that he had run several businesses and used internal controls to prevent something like this from happening. Their business was so new, however, that the business was operating using a temporary checkbook, so those controls were not all in place. The Defendant wrote the unauthorized checks out of the business's temporary checkbook. The Defendant removed the check stubs from the checkbook and then charged customer accounts to compensate for the stolen money.

Mr. Schubert testified that the Defendant was aware that he had been diagnosed with cancer. Before his diagnosis, it was his job to ensure the books were accurate. After his diagnosis, he began chemotherapy and was not able to oversee the bookkeeping as closely.

Mr. Schubert said that there were prompts within the software that told the Defendant that she was not making accurate entries, but she made the entries anyway to hide her theft. She took money out of the business's capital account and put the inventory item into another vendor who had not supplied them anything.

Mr. Schubert said that, after his third surgery related to his cancer treatment, he was able to walk again and came back to work. He noticed that the check stubs were missing from the checkbook, and he questioned the Defendant about it. The Defendant quit her employment. After she left, Mr. Schubert had to expend $14,000 in an attempt to repair, and then ultimately replace, the accounting software.

Mr. Schubert testified that the company had invested $800,000 in inventory and remodeling and that the business was not profitable at the time that the Defendant took money from it.

Nathan Scott Hale, Jr., testified that he was the managing partner at SIA Firearms. Mr. Hale testified that he worked for another armory, TAC, where he became acquainted with Mr. Schubert. The two decided to open their own business with Mr. Schubert

providing the financing and Mr. Hale providing the skill and sales. The Defendant was the bookkeeper at TAC while he worked there, and she seemed like an intelligent young lady, so SIA hired her when they opened to be their bookkeeper also.

Mr. Hale recalled that Mr. Schubert was diagnosed with cancer two days after they opened the store, so more of the responsibilities fell to Mr. Hale. The theft made him feel as if he did not live up to those responsibilities, despite his working between seventy and eighty hours per week. Mr. Hale said that he had trusted the Defendant.

The State argued that the granting of judicial diversion was inappropriate given the Defendant's actions. It asserted that she took advantage of a situation wherein she was responsible for money and one of the owners got sick and could not oversee the Defendant's work. Her actions were based solely on greed. After this offense, the Defendant had been charged with forging a check in Blount County, which, along with other factors, showed that her amenability to correction was low.

The State acknowledged that it had agreed to diversion for the Defendant's co-defendant but stated that the co-defendant did not violate a position of trust and was unaware of Mr. Schubert's cancer diagnosis and treatment. Further, the State's position was that the Defendant had met her co-defendant on a dating app and approached him with this opportunity.

Upon questioning by the trial court, the Defendant's counsel said that the Defendant's Blount County charge allegedly occurred when she attempted to negotiate a check from a business where she worked at the time. Counsel argued that judicial diversion was still appropriate because these were non-violent offenses committed by a Defendant with a low risk of recidivism and high amenability to correction. Counsel asserted that the Defendant had accepted responsibility and expressed remorse.

The trial court continued the case for thirty days in an attempt to learn the outcome of the Blount County charges before sentencing the Defendant.

At the subsequent hearing, Jennifer Henson from Tennessee Truck Driving School in Blount County testified that the Defendant worked for the school in May 2016. The school terminated the Defendant's employment after the Defendant entered an employee on the payroll that was not an employee. In order to do this, the Defendant had to enter a false name and address into the databank that was responsible for payroll. The Defendant entered the information falsely and also reported that this individual was making $52,000 per year, which would have been $2,000 bi-weekly. The Defendant falsely entered all of the information on the fake employee's I-9 document. The Defendant further falsely filled out a W-4 and tax exemption documents.

Ms. Henson said that when she discovered the Defendant's actions, she contacted the payroll company, who provided the Defendant's user ID as the one that had been used to set up the false employee. At this point, the owner of the company terminated the Defendant's employment.

Defendant's counsel informed the trial court that the Defendant was employed at the time of the sentencing hearing, that her current employer knew of her history, and that the employer had written a letter in support of the Defendant being granted judicial diversion.

The Defendant offered her statement to the trial court in which she stated that she could not change the past but would like to make it right. She said that she knew that Mr. Schubert had a medical issue but that it must have been a brief procedure because he was back at the business shortly after the procedure. She reminded the trial court that her only past criminal history was one speeding ticket and a seat belt violation and that those were ten years ago.

The trial court denied the Defendant's request for judicial diversion but granted her request for full probation, finding:

> [T]here have been multiple occasions where the State of Tennessee has . . . objected to placement [of a defendant] on judicial diversion and this Court has overruled their objection and placed someone being prosecuted for theft of a business on judicial diversion.
>
> You did a lot of things right, but you did a lot of things wrong. The reason I wanted to hear from Ms. Henson, who testified here just a few minutes ago, if you had been caught immediately on the theft that occurred that led to the convictions in this case and had been convicted and sentenced and thereafter did what I believe you did, and I'm not asking you to comment because you have a Fifth Amendment privilege not to, but I am convinced that you were setting up a scheme at Tennessee Truck Driving School to start collecting paychecks for . . . a ghost employee, someone who didn't exist, and you were going to pocket it.
>
> So had that occurred and you already been on diversion in this instance this Court would not have hesitated in revoking your diversion. So I can't see the logic in placing you on diversion at this point in time.

I toyed with the idea, I've gone back and forth about whether or not to give you some jail time, I'm not going to do that, because I want you to keep your job so that you're making the money to pay these men back. But if there's any evidence put before this Court that you're not paying them back as you have been ordered to do, or if there is evidence that you are suspected and it's proven that you are involved in some sort of larcenous scheme with an employer that you're with now, or any other employer, within the next three years, you are going to the penitentiary, do you understand that?

For each of the two convictions, the trial court sentenced the Defendant to three years in the Tennessee Department of Correction, suspended to supervised probation. It denied her request for judicial diversion.

It is from these judgments that the Defendant now appeals.

## II. Analysis

The Defendant contends that the trial court did not consider the relevant factors for determining eligibility for judicial diversion as enumerated in *State v. Electroplating, Inc*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1996). She contends that those factors weigh in favor of her being granted judicial diversion. The State agrees that the trial court did not consider the relevant factors on the record but contends that the record supports its denial of judicial diversion. We agree with the State.

The standard of review for questions related to probation or any other alternative sentence is "'an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act.'" *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012)). A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014) (order) (per curiam). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.* at 475. The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5).

"Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) (2014) for a trial court's deferring proceedings in a criminal case.

*See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id*. To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. T.C.A. § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. T.C.A. § 40-35-313(a)(1)(A). "[A] 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*Id*. (quoting *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)). "Further, the trial court must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc*., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) ).

Although judicial diversion is not a sentence, our supreme court determined that the standard of review first expressed in *State v. Bise*, applies to "appellate review for a trial court's sentencing decision to either grant or deny judicial diversion." *King*, 432 S.W.3d at 325. Importantly, however, the court emphasized that the adoption of the *Bise* standard of review "did not abrogate the requirements set forth in *Parker* and *Electroplating*, which are essential considerations for judicial diversion." *King*, 432 S.W.3d at 326.

The trial court need not provide a recitation of all the applicable "factors when justifying its decision on the record in order to obtain the presumption of reasonableness," but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it." *King,* 432 S.W.3d at 327. When the trial court considers each of the factors enumerated in *Parker* and weighs them against each other, placing its findings in the record, as required by *Electroplating, Inc*., we "apply a presumption of reasonableness," per *Bise*, and will "uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id*. When "the

trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard . . . is not appropriate." *Id*. Instead, "the appellate courts may either conduct a *de novo* review or, if more appropriate under the circumstances, remand the issue for reconsideration. The determination as to whether the appellate court should conduct a de novo review or remand for reconsideration is within the discretion of the reviewing court." *Id*. at 328.

Although the trial court did not expressly address all of the relevant factors, the record in the instant case is sufficient for a *de novo* review. *See King*, 432 S.W.3d at 328. While the record does not include the guilty plea hearing transcript, it does include the circumstances of the offense in both the presentence report and as testified to by witnesses in the sentencing hearings.

We first note that the Defendant is "qualified" for judicial diversion under the requirements of Tennessee Code Annotated section 40-35-313(a)(1)(B) (2014). We therefore turn to discuss the factors enumerated in *Parker* and *Electroplating*. We conclude that the first factor, whether the Defendant is amenable to correction, weighs against granting her judicial diversion. As the trial court found, the Defendant committed an additional offense after the two offenses in this case. She used her position of trust to steal money from her employers in this case. Having been caught in this case, she left her employment and took another position with a driving school. There, she created the identity of a false employee in a computer system with the intent to pay that employee money that the Defendant would then benefit from. The theft from this third employer occurred three months before she was charged in this case. Her repeated pattern of deceptive acts of theft from her employers weighs heavily against her being granted judicial diversion.

The circumstances of her offenses also do not weigh in favor of her being granted judicial diversion. The Defendant took more than $3,050 from her employer, writing two checks four months apart to a man, Demon Richards, who then cashed them and gave the Defendant half of the money. The State's position was that the Defendant approached Mr. Richards with this scheme, and the Defendant posited that it was Mr. Richards's idea. SIA, a new company, hired the Defendant to be their bookkeeper. Shortly after opening, the SIA partner in charge of the finances became ill with cancer, a fact which he says the Defendant knew. Forty-five days after the new business opened, and a month after her first offenses, the Defendant wrote four checks totaling almost $10,000 to Mr. Richards, with whom she split the proceeds. She agreed that the unauthorized checks were not detected earlier in part because of Mr. Schubert's illness, but she said she did not know he had cancer or the extent of his illness. We conclude that the Defendant took advantage of her position of trust as bookkeeper for two separate companies and also took advantage of the fact that one of the SIA partners was sick and unable to oversee her

work more closely. These circumstances do not lend themselves to a grant of judicial diversion.

The Defendant has no mentionable criminal record, which weighs in favor of judicial diversion. The Defendant's social history weighs in favor of diversion to the extent that she is a single mother who cares for her child and has good social connections. It weighs against diversion to the extent that she met a man on a dating app and then was either persuaded herself or she persuaded him to commit repeated crimes against her employers. The record evinces that the Defendant is in good physical and mental health and that this offense was committed solely based on her own greed.

Finally, as to deterrence, we conclude that this factor weighs against granting the Defendant diversion. The Defendant used her position as a bookkeeper, a position of trust, to write unauthorized checks from her employer's business account. The partners of SIA approached the Defendant and asked her to keep the books for a business that they were opening. The Defendant took advantage of her employer when the business was brand new and the owners had just expended a large amount of capital on inventory. As the bookkeeper, she was aware that the business was not yet profitable at the time that she stole repeatedly from it. Further, the Defendant committed her offenses shortly after the business opened, during a time when the owner in charge of supervising the Defendant was ill.

Ultimately, the Defendant's continued criminal behavior also impacts our analysis of the circumstances of the offenses, as the Defendant's convictions are more than isolated instances of criminal behavior. Rather, they constitute a pattern of theft from two different employers. Therefore, the Defendant's amenability to correction, the deterrence value to the Defendant, and the circumstances of the offense weigh heavily against the grant of judicial diversion. *See State v. Parsons*, 437 S.W.3d 457, 496 (Tenn. Crim. App. 2011) (affirming denial of judicial diversion where, even though the remaining factors were satisfactory or inconclusive, the defendant's amenability to correction and the circumstances of the offense "weighed heavily" against judicial diversion).

Based on our *de novo* review of the record, we conclude that the ends of justice would not be served by granting the Defendant's request for judicial diversion. Therefore, even though the trial court did not adequately consider all of the necessary factors, the record supports the trial court's denial of judicial diversion.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE